UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$603,840 IN U.S. FUNDS SEIZED FROM FIRST REPUBLIC BANK ACCOUNT NO. \*\*\*-\*\*\*\*-8261, AND ANY ACCRUED INTEREST,<br><br>Defendant. | CASE NO.  CV19-1375<br><br>**VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

COMES NOW the United States, by and through its undersigned counsel, and alleges:

## I.   NATURE OF THE ACTION

1. This is a civil *in rem* action for the forfeiture of $603,840 in U.S. funds seized on March 29, 2019 from First Republic Bank account number \*\*\*-\*\*\*\*-8261, held in the name of G.S. (hereafter "the Defendant Funds").

## II.   LEGAL BASIS FOR FORFEITURE

2. The Defendant Funds are forfeitable pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 981(a)(1)(A) for violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1956(a)(1)(A)(i) (Promotional Money Laundering). Specifically, the Defendant Funds

Verified Complaint for Forfeiture *In Rem* - 1
*U.S. v. $603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

represent proceeds of the Wire Fraud, as well as property involved in the Money Laundering.

## III. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345 (United States is plaintiff) and 1355(a) (action for forfeiture).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1355(b)(1)(A) (acts giving rise to the forfeiture occurred in this district).

5. Pursuant to a seizure warrant executed on March 29, 2019, the United States Marshals Service took custody of the Defendant Funds, and they remain in the custody of the United States.

6. As provided in Supplemental Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Funds if they are in the government's possession, custody, or control. As such, the Court will have *in rem* jurisdiction over the Defendant Funds when the accompanying Warrant of Arrest *in Rem* is issued, executed, and returned to the Court.

## IV. FACTUAL BASIS FOR FORFEITURE

7. This civil forfeiture case is related to the United States' criminal prosecution of Keenan Gracey in Western District of Washington Cause No. CR19-001-RSM. The United States charged Mr. Gracey, by Superseding Indictment returned on July 25, 2019, with ten counts of Wire Fraud, in violation of 18 U.S.C. § 1343, six counts of Promotional Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and two counts of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Dkt. No. 33). On August 15, 2019, Mr. Gracey entered pleas of guilty to one count of Wire Fraud and one count of Promotional Money Laundering (Dkt. No. 49). Mr. Gracey's fraud scheme, and his related money laundering, is summarized in the paragraphs that follow.

Verified Complaint for Forfeiture *In Rem* - 2
U.S. v. $603,840 in U.S. Funds

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Mr. Gracey's Fraud Scheme*

8. Between June 2016 and December 2018, Mr. Gracey posed as a wealthy English financier, with degrees from the London School of Economics and Oxford University, who claimed to have special access to valuable stock before its initial public offering (IPO). In that role, Mr. Gracey identified individuals who had money to invest and/or relationships with others who had money to invest. Mr. Gracey solicited these individuals to purchase stock he in fact did not have and therefore could not sell. Mr. Gracey collected nearly $6 million in investment monies from his victim investors over the relevant period.

9. To promote the appearance he was a wealthy financier, Mr. Gracey rented luxury vehicles (Bentleys, Ferraris, Lamborghinis) as well as multi-million dollar estates in Mercer Island and Clyde Hill, Washington, and in Rancho Santa Fe and Beverly Hills, California. He used these cars and estates as props to persuade investors to purchase his fraudulently-offered stock. He regularly used the rental estates to host potential investors.

*Mr. Gracey's Rental of the Beverly Hills Estate*

10. The Defendant Funds the United States seeks to forfeit in this action represent rental payments Mr. Gracey made to G.S., the owner of the Beverly Hills estate. As detailed in the paragraphs that follow, Mr. Gracey used proceeds of his fraud to make these rental payments, and G.S. accepted them knowing the Securities Exchange Commission had filed suit against Mr. Gracey alleging he was involved in securities fraud and enjoining him from continuing his investment activities. G.S. also knew the SEC had alleged Mr. Gracey's assets resulted from defrauding investors and the SEC would likely seek to seize them for return to Mr. Gracey's victim investors. G.S. also knew Mr. Gracey was using the Beverly Hills estate to entertain potential investors and the estate played an important role in Mr. Gracey's sales presentation. Mr. Gracey's use

Verified Complaint for Forfeiture *In Rem* - 3
*U.S. v. $603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of fraud proceeds to make his rental payments constitutes money laundering, specifically promotional money laundering.

11. In January 2018, G.S. listed the Beverly Hills estate for rent on Airbnb, at a rate of $7,500 per night. The estate is located on a 5-acre lot in the gated Beverly Park community. It is comprised of an 8-bedroom, 10-bathroom house with a swimming pool and onsite vineyards. Within the last year, it was listed for sale for $47,500,000.

12. On or about January 19, 2018, Mr. Gracey contacted G.S. through Airbnb and arranged to rent the Beverly Hills estate. Mr. Gracey proceeded to rent the estate at the nightly rate $7,500 from January 19, 2018 until G.S. evicted him on October 1, 2018. (Although Mr. Gracey was evicted on October 1, 2018, bank records reflect he continued to make payments against his overdue rent after his eviction, with the last documented payment on November 16, 2018.)

13. G.S. provided Mr. Gracey with wire instructions for his First Republic Bank account number \*\*\*-\*\*\*\*-8261 (hereafter, First Republic Bank Account), and Mr. Gracey made his rental payments by transferring them directly into that account.

14. G.S. and Mr. Gracey were in regular email contact during the period of Mr. Gracey's tenancy. Many of their emails discuss the timing of Mr. Gracey's rental payments, which were frequently late. On numerous occasions, G.S. threatened to evict Mr. Gracey for non-payment of rent. G.S. and Mr. Gracey also frequently discussed the fact that Mr. Gracey was creating disturbances in the estate's gated community due the number of guests he was hosting. Included in those guests were potential investors that Mr. Gracey was courting.

### G.S. Learns the SEC Has Filed Legal Action Against Mr. Gracey

15. On May 10, 2018, while Mr. Gracey was renting the Beverly Hills estate from G.S., the SEC filed suit against Mr. Gracey alleging he was involved in securities fraud. In conjunction with that suit, the SEC enjoined Mr. Gracey from continuing his investment activities.

Verified Complaint for Forfeiture *In Rem* - 4
*U.S. v. $603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16. The emails between G.S. and Mr. Gracey reflect G.S. was aware of Mr. Gracey's investment activities from the beginning of their rental relationship. They also reflect G.S. was aware the SEC was scrutinizing Mr. Gracey's investment activities as early as April 3, 2018, more than a month before the SEC actually filed suit.

17. The emails reflect that by July 7, 2018, G.S. had consulted with a third party, who appears to have been an attorney, about Mr. Gracey's "SEC ISSUES." In an email to Mr. Gracey on that date, G.S. sent what appears to be initial legal guidance from that third party that he had pasted into the body of the email. The email states the SEC had obtained a temporary restraining order against Mr. Gracey "and would not have done so without a mountain of hard evidence." It also notes the SEC had taken the position that Mr. Gracey's "assets are the result of defrauding investors. Therefore, he should not be able to use those assets to pay his fine. The SEC will likely hire a trustee to oversee the return of investor moneys to those he dealt with." It also states "the court will lock accounts and order the seizure of assets." Finally, it states "the SEC will typically refer these to the US attorney for criminal proceedings" and recommends Mr. Gracey contact an identified attorney in Los Angeles, "the best securities SEC attorney on the west coast."

18. In an email sent earlier that same day (July 7, 2018), Mr. Gracey had told G.S. he had hosted a party for potential investors at the Beverly Hills estate the previous night. In an email sent later that day, Mr. Gracey tells G.S. that he "will do what is necessary to stay [… in the Beverly Hills estate], [as] this is my ability to earn right now and I am giving it to you … once this is resolved with the sec." In email sent immediately after this one, Mr. Gracey tells G.S. "[s]taying now, will result in my gaining access to obtaining my much more working capital, which allows me to take care of this and the agreement we have in place …[.]" The following day (July 8, 2018), Mr. Gracey sent G.S. an email stating "right now I have 3 meetings set up at the estate this upcoming week, as you know this is what keeps me running right now." On July 21, 2018, Mr. Gracey sent another email stating that "I do need to have access to guests to continue to

Verified Complaint for Forfeiture *In Rem* - 5
*U.S. v. $603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

earn as you know." On July 24, 2018, Mr. Gracey tells G.S. he "need[s] to keep the status quo as if everything is normal" and "as I'm sure you're well aware I do need the magic of the estate for anyone new."

19. Despite having learned about the SEC allegations, as well as the likely seizure of Mr. Gracey's assets for return to victim investors, and knowing Mr. Gracey was using the Beverly Hills estate to solicit additional investors, G.S. continued to rent to Mr. Gracey and continued to accept rental payments from Mr. Gracey.

20. In fact, in June 2018, G.S. secured a $10 million loan to help Mr. Gracey pay his fine in the SEC case. G.S. intended to re-loan the $10 million to Mr. Gracey and had a written agreement prepared to govern that loan. Ultimately, however, G.S. and Mr. Gracey did not execute the loan agreement, and G.S. did not make the loan.

21. G.S. eventually evicted Mr. Gracey on October 1, 2018. Following his eviction, Mr. Gracey continued to make payments to G.S. against his overdue rent. He made the last documented payment on November 16, 2018.

### *The Defendant Funds are Proceeds of Mr. Gracey's Fraud that G.S. Received with Knowledge of the Fraud*

22. The United States conducted a financial analysis in order to trace the proceeds that Mr. Gracey obtained from his investment fraud and then used to make rental payments to G.S. The United States only seeks to forfeit those proceeds G.S. received after July 7, 2018 – the date on which his email to Mr. Gracey reflects he knew Mr. Gracey's assets likely derived from investment fraud and would need to be returned the victim investors. These are the proceeds for which the United States believes G.S. can assert no colorable "innocent owner" defense pursuant to 18 U.S.C. § 983(d). When forfeited, the United States will request these proceeds be applied toward restitution to Mr. Gracey's investor victims. The United States' financial tracing is detailed in the paragraphs that follow.

Verified Complaint for Forfeiture *In Rem* - 6
*U.S. v. $603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

23.     In conjunction with its suit, the SEC froze Mr. Gracey's financial accounts. As a result, in May 2018, Mr. Gracey began using four accounts held by another person (Person 1), and the name of a company registered to Person 1, to receive investor monies and to transfer rental payments to G.S. The United States has reviewed the financial records and performed a financial analysis for these accounts, collectively "the Intermediary Accounts." These Intermediary Accounts are:

   a. **Wells Fargo Account -9577**:  This is a checking account held in the name of Person 1, with an account number ending in the digits 9577;

   b. **Bank of America Account -4765**:  This is a checking account held in the name of Person 1, with an account number ending in the digits 4765;

   c. **HSBC Account -9103**: This is a checking account held in the name of Person 1, with an account number ending in the digits 9103.

   d. **HSBC Account -2588**: This is a business checking account held in the name of a company registered to Person 1, with an account number ending in the digits 2588.

24.     In the first three of these Intermediary Accounts, identifiable fraud proceeds were commingled, to varying degrees, with other funds that either cannot be confirmed to be fraud proceeds or can be affirmatively identified *not* to be fraud proceeds. To determine the amount of fraud proceeds traceable from each Intermediary Account into G.S.'s First Republic Bank Account, the United States applied the "lowest intermediate balance rule" to each Intermediary Account. The lowest intermediate balance rule (LIBR) is a recognized methodology for tracing the proceeds of a crime through accounts in which they have been commingled with funds that are not proceeds. *See United States v. Banco-Cafetero Panama*, 797 F.2d 1154, 1158-1160 (2nd Cir. 1986) and *United States v. Haleamau*, 887 F. Supp.2d 1051, 1056-1058 (D. Haw. 2012).

25.     Applying LIBR, the United States treated the first funds withdrawn from each commingled account as non-fraud proceeds. Specifically, the United States treated all funds withdrawn from a commingled account as non-fraud proceeds until all non-

Verified Complaint for Forfeiture *In Rem* - 7
*U.S. v. $603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

fraud proceeds were exhausted, at which point any additional withdrawals were deemed to be comprised of fraud proceeds. More specifically, the United States applied LIBR in the following manner.

26. First, the United States determined the relevant "Tracing Period" for each Intermediary Account. The Tracing Period was established by determining the first date on which proceeds of Mr. Gracey's fraud were deposited into the relevant Intermediary Account and the last date on which a payment was made from the relevant Intermediary Account to G.S.'s First Republic Bank Account for rent on the Beverley Hills estate.

27. After determining the relevant Tracing Period, the United States then determined, for each Intermediary Account, (a) the initial balance of the account at the beginning of the Tracing Period; and, (b) the amount of funds other than confirmed fraud proceeds that were deposited into the account during the Tracing Period. The sum of these two numbers (initial balance plus deposited funds *not* confirmed to be fraud proceeds) is the amount of funds in the relevant Intermediary Account during the Tracing Period that arguably did *not* constitute fraud proceeds.

28. For each Intermediary Account, the United States then determined the total amount of funds transferred from that account to G.S.'s First Republic Bank Account during the Tracing Period. Then, as dictated by LIBR, the United States applied the conservative assumption that the fraud proceeds remained in that account until *all* of the funds *not* confirmed to be fraud proceeds had been withdrawn from or transferred out of that account. To do this, the United States subtracted the total amount of funds not confirmed to be fraud proceeds (as calculated above) from the amount of funds transferred from that account to G.S.'s First Republic Bank Account. The resulting figure is the *minimum* amount of fraud proceeds that were transferred from that account to G.S.'s First Republic Bank account. A summary of this analysis for each Intermediary Account follows. This analysis is also summarized in a table at Paragraph 45, below.

Verified Complaint for Forfeiture *In Rem* - 8
U.S. v. $603,840 in U.S. Funds

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Wells Fargo Account -9577**

29. Bank records reflect that known victims deposited a total of $425,460 in fraud proceeds into Wells Fargo Account -9577 between June 8, 2018 and July 30, 2018. Bank records also reflect that a total of $168,850 was transferred from Wells Fargo Account -9577 to G.S.'s First Republic Bank Account between June 18, 2018 and September 28, 2018.

30. The Tracing Period for this account is, therefore, June 8, 2018 (the date on which the first fraud proceeds were deposited) to September 28, 2018 (the date of the last transfer to G.S.'s First Republic Bank Account).

31. The account balance at the beginning of the Tracing Period was negative $20. The account received $62,720 in deposits other than confirmed fraud proceeds over the Tracing Period. During the Tracing Period, therefore, the total amount of funds in this account that are *not* confirmed to be fraud proceeds was $62,720.

32. Subtracting the $62,720 from the total $168,850 in funds that were transferred from this account to G.S.'s First Republic Bank Account during the Tracing Period reflects that – applying LIBR – a *minimum* of $106,130 in fraud proceeds was transferred to G.S.'s First Republic Bank Account.

**Bank of America Account -4765**

33. Bank records reflect that known victims deposited a total of $420,570 into Bank of America Account -4765 between June 4, 2018 and July 17, 2018. Bank records also reflect that a total of $206,400 was transferred from Bank of America Account -4765 to G.S.'s First Republic Bank Account between June 18, 2018 and July 17, 2018.

34. The Tracing Period for this account is, therefore, June 4, 2018 (the date on which the first fraud proceeds were deposited) to July 17, 2018 (the date of the last transfer to G.S.'s First Republic Bank Account).

Verified Complaint for Forfeiture *In Rem* - 9
*U.S. v. $603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

35. The account balance at the beginning of the Tracing Period was $804. The account received $19,992 in deposits other than confirmed fraud proceeds over the Tracing Period. During the Tracing Period, therefore, the total amount of funds in this account that are *not* confirmed to be fraud proceeds was $20,796.

36. Subtracting the $20,796 from the total $206,400 in funds that were transferred from this account to G.S.'s First Republic Bank Account during the Tracing Period reflects that – applying LIBR – a *minimum* of $185,604 in fraud proceeds was deposited into G.S.'s First Republic Bank Account.

### HSBC Account -9103

37. Bank records reflect that known victims deposited a total of $980,982 of fraud proceeds into HSBC Account -9103 between August 1, 2018 and September 7, 2018. Bank records also reflect that a total of $388,000 was transferred from HSBC Account -9103 to G.S.'s First Republic Bank Account between August 1, 2018 and September 26, 2018.

38. The Tracing Period for this account is, therefore, August 1, 2018 (the date on which the first fraud proceeds were deposited) to September 26, 2018 (the date of the last transfer to G.S.'s First Republic Bank Account).

39. The account balance at the beginning of the Tracing Period was $64,742. The account received only $2 in deposits other than confirmed fraud proceeds during the Tracing Period. During the Tracing Period, therefore, the total amount of funds in this account that are *not* confirmed to be fraud proceeds was $64,744.

40. Subtracting the $64,744 from the total $388,000 in funds that were transferred from this account to G.S.'s First Republic Bank Account during the Tracing Period reflects that – applying LIBR – a *minimum* of $323,256 in fraud proceeds was transferred to G.S.'s First Republic Bank Account.

Verified Complaint for Forfeiture *In Rem* - 10
*U.S. v. $603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**HSBC Account -2588**

41. Bank records reflect that known victims deposited a total of $162,000 in fraud proceeds into HSBC Account -2588 between November 5, 2018 and November 16, 2018. Bank records also reflect that a total of $135,000 was transferred from HSBC Account -2588 to G.S.'s First Republic Bank Account between November 9, 2018 and November 16, 2018.

42. The Tracing Period for this account is, therefore, November 5, 2018 (the date on which the first fraud proceeds were deposited) to November 16, 2018 (the date of the last transfer to G.S.'s First Republic Bank Account).

43. The account balance at the beginning of the Tracing Period was $0. No funds other than known fraud proceeds were deposited into this account during the Tracing Period.

44. The tracing with respect to this account, therefore, reflects that *all* $135,000 transferred to G.S.'s First Republic Bank Account during the Tracing Period was comprised of fraud proceeds.

**Summary of Analysis for the Intermediary Accounts**

45. The following table summarizes the United States' calculations for each Intermediary Account. As shown in the table (and discussed in the narrative above), the amount of fraud proceeds transferred to G.S.'s First Republic Bank Account (Column F) is equal to the total amount of transfers from the relevant Intermediary Account to G.S.'s First Republic Bank Account (Column C) minus initial balance (Column D), minus other deposits (Column E):

///

Verified Complaint for Forfeiture *In Rem* - 11
U.S. v. $603,840 in U.S. Funds

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| A<br>Account Name | B<br>Tracing Period | C<br>Total Transfers to G.S.'s First Republic Bank Account | D<br>Initial Balance | E<br>Other Deposits | F<br>Fraud Proceeds Transferred |
|---|---|---|---|---|---|
| Wells Fargo Account -9577 | 6/8/2018 – 9/28/2018 | $168,850 | ($20) | $62,720 | $106,130 |
| Bank of America Account -4765 | 6/4/2018 – 7/13/2018 | $206,400 | $804 | $19,992 | $185,604 |
| HSBC Account -9103 | 8/1/2018 – 9/26/2018 | $388,000 | $64,742 | $2 | $323,256 |
| HSBC Account -2588 | 11/5/2018 – 11/23/2018 | $135,000 | $0 | $0 | $135,000 |
| Total | | | | | $749,990 |

46.     Based on this analysis, therefore, the United States determined that, under LIBR, $749,990 in fraud proceeds was transferred into G.S.'s First Republic Bank Account.

### Analysis of G.S.'s First Republic Bank Account

47.     The analysis of the Intermediary Accounts set out above established that a minimum of $749,990 in total fraud proceeds was transferred from those accounts into G.S.'s First Republic Bank Account between June 18, 2018 and November 16, 2018.

48.     Bank records for G.S.'s First Republic Bank Account reflect that the fraud proceeds deposited into that account were commingled with other non-proceeds funds received by G.S. in that account. To determine, therefore, what portion of the $749,990 in fraud proceeds remained in G.S.'s First Republic Bank Account, the United States again

Verified Complaint for Forfeiture *In Rem* - 12
U.S. v. *$603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 applied LIBR and treated the first withdrawals from the account as non-fraud proceeds.
2 To do so, the United States performed the following calculations.

49. The United States used a tracing period beginning May 23, 2018 (the date of the first deposit of fraud proceeds) and ending on February 28, 2019 (the last date for which the United States has records for G.S.'s First Republic Bank Account).

50. The account balance at the beginning of this tracing period was $111,323. The account received $707,546 in deposits other than fraud proceeds over the Tracing Period. During the Tracing Period, therefore, the total amount of funds in this account that were *not* fraud proceeds was $818,869.

51. Bank records reflect that $666,313 was transferred out of G.S.'s First Republic Bank Account during the Tracing Period. Applying LIBR, that entire amount was comprised of non-fraud proceeds, leaving an additional $152,556 in non-fraud proceeds remaining in G.S.'s First Republic Bank Account ($818,869 minus $666,313 equals $152,556). In other words, the *entire* amount of fraud proceeds $749,990 remained in G.S.'s First Republic Bank account as of February 28, 2019 (the end of the Tracing Period).

52. The United States then determined what portion of those proceeds G.S. received with knowledge of Mr. Gracey's fraudulent activity – i.e., after July 7, 2018. Of the $749,990 in fraud proceeds that was transferred from the Intermediary Accounts into G.S.'s First Republic Bank Account, $146,150 was transferred before July 7, 2018. Excluding that amount left $603,840 in fraud proceeds in G.S.'s First Republic Bank Account. It is that amount the United States seized on March 27, 2019, and these are the Defendant Funds the United States seeks to forfeit in this action.

**Mr. Gracey's Admissions Regarding the Defendant Funds**

53. In his plea agreement, Mr. Gracey admitted he committed Wire Fraud, in violation of 18 U.S.C. § 1343, by inducing his victims to tender investment monies via wire transfer (WDWA Cause No. CR19-001-RSM, Dkt. No. 49, ¶ 12(i)). He also

Verified Complaint for Forfeiture *In Rem* - 13
*U.S. v. $603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

admitted he committed Promotional Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), by using fraud proceeds to rent the luxury vehicles and estates he used to promote his fraud and solicit additional victim investors (*Id.*, ¶ 12(m)).

54. Mr. Gracey also made a number of admissions relevant to the Defendant Funds. Specifically, Mr. Gracey admitted he used monies he collected from his investor victims to pay rent on the Beverly Hills estate (*Id.*, ¶ 12(n)).

55. Mr. Gracey also admitted that, after the SEC froze his own financial accounts, he directed investors to deposit investment monies into accounts controlled by another person (Person 1) (*Id.*). He admitted that he used account information provided by Person 1 to access and use those accounts, including to transfer rental payments for the Beverly Hills estate to G.S.'s First Republic Bank Account (*Id.*).

56. Mr. Gracey also admitted that no later than July 7, 2018, he and G.S. communicated about the SEC allegations against him, including the allegations Mr. Gracey had committed securities fraud and his assets derived from fraud (*Id.*, ¶ 12(o)). He also admitted he told G.S. he was entertaining investors at the Beverly Hills estate and that doing so enhanced his ability to solicit investments (*Id.*).

57. Finally, Mr. Gracey admitted that between June 2018 and November 2018, he transferred a minimum of $749,990 in rental payments from Person 1's account to G.S.'s First Republic Bank Account, of which $603,840 was transferred on or after July 7, 2018 (Dkt. No. 49 ¶¶ 12(n) & (o)).

## V. REQUEST FOR RELIEF

As required by Supplemental Rule G(2)(f), the facts set forth in this Verified Complaint support a reasonable belief that the United States will be able to meet its burden of proof at trial. More specifically, there is probable cause to believe that the Defendant Funds constitute proceeds of Mr. Gracey's Wire Fraud, which are forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C), and property involved in his Money Laundering, which is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(A).

Verified Complaint for Forfeiture *In Rem* - 14
*U.S. v. $603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

WHEREFORE, the United States respectfully requests:

1. A warrant issue for the arrest of the Defendant Funds;
2. That due notice be given to all interested parties to appear and show cause why the Defendant Funds should not be forfeited;
3. The Defendant Funds be forfeited to the United States for disposition according to law; and,
4. For such other and further relief as this Court may deem just and proper.

DATED this 29th day of August, 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*/s/ Michelle Jensen*
MICHELLE JENSEN
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101
(206) 553-2619
Michelle.Jensen@usdoj.gov

Verified Complaint for Forfeiture *In Rem* - 15
U.S. v. $603,840 in U.S. Funds

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VERIFICATION

I, Milas Howe, am a Special Agent with the Federal Bureau of Investigation in Seattle, Washington. I furnished the investigative facts contained in the foregoing Verified Complaint for Forfeiture *In Rem*. The investigative facts are based on personal knowledge I obtained from my involvement in the underlying investigation, my review of the relevant investigative material, other law enforcement officers involved in the investigation, other reliable official Government sources, and my own training and experience.

I hereby verify and declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *In Rem*, that I know its contents, and that the facts it contains are true and correct to the best of my knowledge.

Executed this 29 day of August, 2019.

MILAS HOWE
Special Agent
Federal Bureau of Investigation

Verified Complaint for Forfeiture *In Rem* - 16
U.S. v. $603,840 in U.S. Funds

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

### DEFENDANTS
$603,840 IN U.S. FUNDS SEIZED FROM FIRST REPUBLIC BANK ACCOUNT NO. ***-****-8261, AND ANY ACCRUED INTEREST

(b) County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Michelle Jensen, Assistant United States Attorney
United States Attorney's Office, Asset Forfeiture Unit (206-553-2242)
700 Stewart Street, Suite 5220, Seattle, WA 98101-1271

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 981(a)(1)(A)

Brief description of cause:
Proceeds of wire fraud (18 U.S.C. § 1343) & property involved in money laundering (18 U.S.C. § 1956(a)(1)(A)(i))

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE Ricardo S. Martinez
DOCKET NUMBER CR19-001-RSM

DATE 08/29/2019

SIGNATURE OF ATTORNEY OF RECORD
*/s/ Michelle Jensen/*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$603,840 IN U.S. FUNDS SEIZED FROM FIRST REPUBLIC BANK ACCOUNT NO. \*\*\*-\*\*\*\*-8261, AND ANY ACCRUED INTEREST,<br><br>Defendant. | CASE NO.   CV19-1375<br><br>**WARRANT OF ARREST *IN REM*** |

TO:   UNITED STATES MARSHALS SERVICE,
*and/or its duly authorized agents and representatives*

WHEREAS, a Verified Complaint for Forfeiture *in Rem* has been filed on August 29, 2019 in the United States District Court for the Western District of Washington, alleging the above-captioned $603,840 in U.S. Funds Seized from First Republic Bank Account No. \*\*\*-\*\*\*\*-8261, and any Accrued Interest (hereafter "the Defendant Funds") are subject to forfeiture to the United States pursuant to pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 981(a)(1)(A) for violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1956(a)(1)(A)(i) (Promotional Money Laundering);

WARRANT OF ARREST *IN REM* - 1
*U.S. v. $603,840 in U.S. Funds*

UNITED STATES ATTORNEY
700 STEWART STREET. SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

YOU ARE, THEREFORE, HEREBY COMMANDED to arrest and seize the Defendant Funds; and,

YOU ARE FURTHER COMMANDED to provide notice of this action to all parties thought to have an interest or claim in the Defendant Funds so they may file a verified claim/statement of interest with the Clerk of the Court pursuant to Supplemental Rule G(5) of the Federal Rules of Civil Procedure (governing forfeiture actions *in rem*); and that you promptly, after execution of this process, file the same in this Court with your return thereon.

DATED this _____ day of August, 2019.

WILLIAM M. McCOOL
UNITED STATES DISTRICT COURT CLERK

By: _____
DEPUTY CLERK

Presented by:

*/s/ Michelle Jensen*

MICHELLE JENSEN
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA  98101
(206) 553-2242
Michelle.Jensen@usdoj.gov

NOTE: This warrant is issued pursuant to Rule G(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.

WARRANT OF ARREST *IN REM* - 2
U.S. v. $603,840 in U.S. Funds

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970